**Wayne O. RICHARDSON, Appellant,**

v.

**Mary L. ALTHOFF et al., Appellees.**

**No. 16916.**

Court of Civil Appeals of Texas.

Dallas.

May 19, 1967.

Jack G. Kennedy of Slagle & Kennedy, Sherman, for appellant.

Rayburn Nall of Elliott & Nall, Sherman, for appellees.

DIXON, Chief Justice.

This is a child custody case in which appellant Wayne O. Richardson, a resident of the State of California, seeks custody of his eleven-year-old daughter, who since August 1965 has been in the care and custody of her maternal aunt, Mrs. Mary Althoff, and her husband, William Althoff, residents of the State of Tennessee.

At the conclusion of a hearing the trial court on September 1, 1966 awarded care and custody of the daughter to Mrs. Althoff and her husband.

Appellant and Helen Margaret Richardson separated in 1958. In January 1962 they were divorced in Dallas County, Texas. Custody of two minor sons was awarded to appellant. Custody of one minor daughter, then six years of age, was awarded to the mother.

The mother and daughter moved to Denison, Texas, where they lived in the home of the maternal grandmother, Mrs. John Scully. Helen Margaret Richardson had a history of mental illness and alcoholism. But it is conceded by all concerned, including appellant, that Mrs. Scully, the grandmother, was a person of excellent qualities and that as long as she lived the little girl would be well taken care of. In fact, appellant says that he agreed with Mrs. Scully that he would not seek custody of his daughter as long as Mrs. Scully had charge of her.

Following the separation in 1958 appellant's two sons went to Denison, Texas, where they lived in the home of their paternal grandparents for about two years. In 1960 appellant moved to Hawaii and took the two boys with him. In March 1962 subsequent to his divorce in January 1962 and following his return to the mainland he married his present wife, Mrs. Irene Humphrey Richardson.

The Althoffs, formerly residents of Denison, Texas, visited Mrs. Scully, Mrs. Althoff's mother, in the summer of 1965. It

was apparent that Mrs. Scully was in failing health. Something had to be done about the little girl. It was agreed between the grandmother, the mother, and the Althoffs that the child should go to live with the Althoffs in Chattanooga, Tennessee. The Althoffs took the child into their home where she is still residing under the care of her aunt and uncle. Appellant did not learn of this change until January 1966.

In February 1966 the mother, Helen Richardson, entered the Wichita Falls State Hospital under a permanent commitment. In March 1966 Mrs. Scully died.

Appellant, his wife and his two sons came from California for the hearing. The Althoffs and appellant's daughter came from Tennessee for the hearing.

The two boys, now eighteen and seventeen years of age respectively, testified that they love their sister and hoped she could come live with them. They had visited her and their grandparents in Denison on several occasions. They also love their stepmother, who has devoted herself to their welfare and happiness and has established a happy home life for their father and themselves. This testimony was corroborated by other witnesses including appellant.

On the other hand appellant contributed nothing to the support of the little girl since the divorce. He never came to see her and never wrote to her except maybe at Christmas. He has changed jobs frequently and has recently rented out the home he was paying for and has moved into a rented house. He says that he contributed no money to his daughter's support because he was "broke". Appellant's daughter had not seen her father in five years, in fact there had been very little contact between father and daughter since 1958 when the father and mother separated.

The Althoffs have two daughters, one twenty-one years of age, the other eighteen. They also have a son the same age as the little girl. The Althoffs have taken appellant's daughter into their home where she is considered and treated as a member of their family. The two older girls help her in many ways, with her hair, her clothes, etc. She and the Althoffs' son go to school together. There is ample testimony that the Althoffs have a good home and home life and that appellant's daughter is well cared for and happy.

The trial judge interviewed appellant's daughter in chambers in the presence of attorneys for both sides. She expressed her preference to continue to live with her aunt and uncle and cousins in Tennessee.

The court made detailed findings, among them the following: (1) Both the Richardson home and the Althoff home are physically and economically adequate for the care and custody of the child; (2) both the Richardsons and the Althoffs are fit and proper persons to have care and custody of the child; and (3) the best interest and welfare of the child would be served by allowing her to remain in the Althoff home.

The court concluded that neither of the parties have a personal or property right to custody, the real party in interest being the child herself, who has the right to have her custody awarded to the persons who can best serve her interest and welfare.

OPINION

Appellant has briefed eight points of error in which he asserts that the trial court erred (1) and abused its discretion in awarding the child to the aunt after the mother had become insane and the father was found to be a fit and proper person to have custody; (2) as a matter of law in placing custody in aunt and uncle when there was no allegation, finding or conclusion that the best interest of the child *demanded* such an award of custody; (3) in awarding custody in aunt and uncle after legal custody had vested in the father as a matter of law following the mother's insanity; (4) in concluding as a matter of law that the father had no personal right to custody after the mother became of unsound mind; (5) in awarding custody to

aunt and uncle when there was no finding or claim that the child was dependent and neglected; (6) in awarding custody to an outsider, as such award is insufficient for the best interest of the child after a finding that the father was fit to have custody; (7) in awarding custody to aunt and uncle where the evidence is insufficient and the law presumes that the best interest of the child is served by awarding custody to the parent; and (8) abused its discretion in awarding custody to aunt and uncle while custody of the brothers remained in the father, thereby dividing the custody of the children.

 We are of the opinion that all of appellant's points of error should be overruled. As a general rule when one parent who has been awarded custody dies or becomes insane and a change in custody becomes necessary, the other parent has a right of custody to his or her own child superior to the right of others, such as an aunt. But the general rule is not applicable when circumstances are present which impel a court in the exercise of its discretion and for the best interest of the child to award custody to someone other than a parent, such as an aunt. For the best interest of the child is then paramount. It is above the right of the parent to have custody. Herrera v. Herrera, 409 S.W.2d 395 (Tex.Sup.1966); Mumma v. Aguirre, 364 S.W.2d 220 (Tex.Sup.1963); Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787 (1955); Legate v. Legate, 87 Tex. 248, 28 S.W. 281 (1894); Davis v. Sears, 35 S.W.2d 99 (Tex.Comm'n App.1931).

In this case the mother, not the father, was awarded legal custody upon the granting of the divorce. The actual care and custody of the child with the father's consent and approval was entrusted to a worthy grandmother. The child and the father were and still are virtual strangers. For about nine years following the separation of the parents in 1958 the father rarely saw the child, and not at all for the last five years. For more than a year following the commitment of the mother and the death of the grandmother the child has lived happily in the care and custody of her aunt, uncle and cousins in Tennessee, sharing their home, companionship and love as a member of their family. Though the father is not unfit and the stepmother has proved herself to be a very worthy person indeed, we cannot say that under the circumstances the court abused its discretion in awarding custody to the aunt. To have done otherwise would have been to disturb relationships which have taken root and to which the child has happily adjusted. To have placed her in the care and custody of her father would have required the little girl to have made another adjustment in the home of parents who for all intents and purposes are strangers to her. Appellant's points are overruled.

The judgment of the trial court is affirmed.

Affirmed.