**In the Interest of K, a child.**

**No. 933.**

Court of Civil Appeals of Texas, Corpus Christi.

Feb. 27, 1975.

Rehearing Denied March 20, 1975.

Donald A. Smyth, Brazoria, for appellant.

T. R. Bandy, Jr., Corpus Christi, for appellee.

## OPINION

BISSETT, Justice.

This is an appeal from a judgment which denied the alleged natural father's petition for voluntary legitimation of a child. This Court is of the opinion that the best interest of the child will be served by not using the true names of either the child, its mother or the alleged father. Tex.Family Code Ann., § 11.19(d), V.T.C.A.

A County Child Welfare Unit of the State Department of Public Welfare, hereinafter called "appellee", filed suit to terminate the parent-child relationship between a child and its natural nother. The alleged father of the child filed a petition for voluntary legitimation of the child. The trial court, following a hearing, rendered judgment that terminated the parent-child relationship between the child and the mother, denied the petition for voluntary legitimation filed by the alleged father, terminated all rights which the alleged father may have had in regard to the child, and appointed appellee managing conservator of the child. The alleged father, hereinafter called "appellant" has duly perfected an appeal from that judgment. The mother did not appeal.

Suit was instituted by appellee a few days after the child was born. The petition alleged that the mother and appellant were each 17 years of age at the time suit was filed. It was further alleged that the child was not born or conceived before or during a marriage of the mother and appellant, or during an attempted marriage of them in apparent compliance with the laws of this state or another state or nation, and that the termination of the parent-child relationship between the child and the mother and the appointment of appellee as managing conservator would be in the best interest of the child. As grounds for

such termination, it was alleged that the mother had executed an irrevocable affidavit of relinquishment of parental rights as provided by Tex.Family Code Ann., § 15.03, and an affidavit of status as required by Tex.Family Code Ann., § 15.-04. Each affidavit was attached to and filed with the petition.

Appellant then filed his petition for voluntary legitimation of the child. Attached to the petition was a statement of paternity, executed by appellant, wherein he stated that he was the father of the child, and that the child was born out of wedlock. He also alleged that the best interest of the child would be served by appointing him managing conservator of the child.

Appellee filed a general denial to appellant's petition for legitimation and specially denied that the best interest of the child would be served by the appointment of appellant as managing conservator. Appellee also filed a supplemental petition and alleged the following reasons why appellant's petition to be appointed managing conservator of the child should be denied, to-wit: 1) appellant is presently confined in a penal institution of the State of Texas and is unable to provide personal care and supervision of said child; and 2) appellant has no resources with which to support said child and no adequate care plan for the child's future.

Appellant, in his first point of error, contends that the trial court "erred in failing to enter a decree establishing appellant's parternity of the child because he filed a petition for voluntary legitimation of the child and a statement of parternity" as required by Sections 13.01 and 13.02 of the Texas Family Code.

Tex.Family Code Ann., § 13.02, provides, in part:

"The statement of paternity authorized to be used in Section 13.01 of this Code must be executed by the father of the child as an affidavit and witnessed by two credible adults. . . ."

Tex.Family Code Ann., § 13.01, reads in part:

"(a) . . . *With the consent of the mother* or the managing conservator, if one has been appointed, *and the court,* and on the filing of a statement of paternity executed by the father and submitted with the petition . . . the court shall enter a decree declaring the child to be the child of the father. (Emphasis supplied).

(b) If a statement of paternity is filed with the State Department of Public Welfare, the father, the mother, or the department may institute a suit for a decree establishing the child as the legitimate child of the person executing the statement. *On the consent of the mother,* the managing conservator, *or the court,* and on the filing of the statement of paternity with the petition, the court shall enter a decree declaring the child to be the legitimate child of the person executing the statement of paternity." (Emphasis supplied).

It is clear that the aforesaid § 13.01 of the Code affords two procedures for the voluntary legitimation of a child. See 5 Texas Tech L.Rev., pp. 621–622. Under paragraph (a) of § 13.01, the petition may be granted if a legally sufficient statement of paternity is submitted with the consent of either the mother or the managing conservator *and* consent of the court. Under paragraph (b), a legally sufficient statement of paternity must first be filed with the State Department of Public Welfare, and when that is done, a petition may be filed for legitimation of the child; the statement of paternity *must* be filed with the petition; a decree shall then be entered declaring the child to be the legitimate child of the person executing the statement of paternity, provided the consent is obtained of either the mother, the managing conservator, *or* the court.

There are several reasons why appellant's petition for legitimation must

fail. First, the statement of paternity, while executed by appellant as an affidavit and witnessed by two persons, is fatally defective. The Code expressly provides that the affidavit *must* be witnessed by two *credible adults*. There is no showing that the two persons who witnessed the statement were "credible adults". Therefore there was no compliance with § 13.02 of the Code. Next, there is no proof in the record that a legally sufficient statement of paternity was filed by appellant with the State Department of Public Welfare before he filed his petition for legitimation. Finally, neither the mother, the managing conservator, nor the court consented to the entry of a decree which would declare the child to be the legitimate child of appellant. There has been no compliance with the requirements of either paragraph (a) or (b) of § 13.01 of the Code. The mere filing of a legally sufficient statement of paternity along with the petition for legitimation does not, of itself, make it mandatory that a decree be entered which declares that the child is the legitimate child of the person executing the statement. Rebuttal evidence relating to the fitness of appellant to be endowed with parental status and to serve as managing conservator was introduced by appellee. It was not the intention of the Legislature, in enacting Chapter 13 of the Code to give the father of a child born out of lawful wedlock any absolute right to establish a parent-child relationship between him and the child, but the intention was to make it legally possible for the establishment of such a relationship, subject to the consent of either the mother or the managing conservator, *and* the court, or, in the alternative in the event a statement of paternity is first filed with the State Department of Public Welfare, subject to the consent of either the mother, the managing conservator *or* the court. There is no consent from anyone in this case. Appellant's first point is overruled.

■ Appellant, in his second point of error, asserts that there was no evidence that he "engaged in any conduct that would permit termination of the parent-child relationship under Section 15.02, Tex.Fam.Code". We do not agree. A "parent-child" relationship did not exist between appellant and the child. See 5 Texas Tech L.Rev., pp. 418–419.

The petition of the appellant constituted an effort by him to establish by court decree a "parent-child relationship" between him and the child. The supplemental petition of appellee resisted that effort, and sought to cut off appellant's right to assert any claim to the child so that the matter could be finally put to rest for the child's welfare. The "parent-child relationship" means such rights, privileges, powers and duties existing between a parent and a child as provided by § 12.04 of the Code. By statutory definition, a man is defined as a parent only if the child is legitimate or adopted by him. Tex.Family Code Ann., § 11.01(3).

Appellant does not attack that portion of the judgment which terminated the parent-child relationship between the mother and the child. Since a parent-child relationship between appellant and the child was not established, his second point cannot be sustained under any theory. Appellant's second point is overruled.

■ In his third point of error, appellant claims that the trial court erred in overruling his special exceptions to appellee's petition because they "failed to state any ground upon which appellant's parental rights could be terminated absent his consent as required by Sections 15.02 and 15.03, Tex.Fam.Code". Appellant, not being a parent of the child as that term is defined in the Code, cannot complain that the petitions filed by appellee do not conform to the requirements of a statute which specifically pertains to "parents" and "termination of the parent-child relationship". Appellant's third point is overruled.

■ While appellant has no point on denial of due process, he argues that "such a

petition for termination of the parent-child relationship which did not include any statutory grounds of termination failed to give appellant adequate notice of the allegations and charges to which he had to reply and was consequently a denial of due process requirements of the Fourteenth Amendment to the United States Constitution". There is no justification for that argument. The judgment recites that "service of citation" was had upon appellant, and that "all parties to this proceeding have been given sufficient and lawful notice" of all proceedings. Appellant appeared at the trial in person and by attorney. He testified at the hearing. He had adequate notice of the grounds urged by appellee in opposition to the pleading filed by him (appellant). He made no attempt to obtain a continuance on the ground that he did not have time to properly defend against the allegations contained in appellee's supplemental petition. He made no objection to the filing of the supplemental petition. There has been no denial of due process in this case.

■ There is another reason why the judgment of the trial court should be affirmed. The evidence conclusively shows that the refusal by the trial court to establish a parent-child relationship between appellant and the child was in the best interest of the child.

Appellant, at the time of the hearing, was almost 18 years of age. He had been in and out of trouble almost constantly from the time he was about 10 years old. He was confined in a juvenile correctional institution on at least two occasions, and while so confined, had stabbed a boy. He was arrested for theft of an automobile in August, 1973, and was convicted for that offense in September, 1973. He received a 5 year probated sentence, which was subsequently revoked. He shot a student at a high school in October, 1973, was convicted of assault with intent to murder, and was sentenced on November 21, 1973 to 20 years confinement in the Texas Department of Corrections. He has been incarcerated continuously, in either a county jail or the Texas Department of Corrections since October 11, 1973. While so incarcerated, he has not received any income from any source. He may be eligible for parole in November, 1977. The statement of facts shows that his minimum discharge date is in 1985, and that his maximum discharge date is in 1993.

Appellant was examined by a psychiatrist in November, 1973. The doctor's report on appellant, which was admitted into evidence over appellant's objections, read, in part, as follows:

"His extremely impulsive action which includes the aggressive attacks and his self-destruction attempts with the wrist slashing signify a real lack of impulse control and poor judgment. He does not consider the consequences of his actions and has not used the benefit of experience to stay out of trouble. He has had very weak relationships with family or friends and has no consistent on-going close ties. His pathetic attempt at a love affair was destructive to the girl. He has poor control of his anger and aggression and rationalizes and justifies his behavior so as not to feel guilty. He has deep repressive feelings when he is confronted with the results of his bad behavior and when he is locked up. These patterns bring him repeatedly into conflict with society."

The doctor also testified in person. He diagnosed appellant as having an anti-social personality, whose past conduct and attitude repeatedly brought him into conflict with society. He further testified that it is probable that the bad behavior patterns developed in the past will recur and that appellant's problems will probably continue. The doctor's opinion was that appellant would make a poor parent. He concluded that appellant's personality would not be a benefit to the child.

The trial court, among other findings of fact, found:

(1) appellant did not have any plan for the future welfare or care of the child;

(2) appellant is not a fit and proper person to be entrusted with the care of the child;

(3) it is in the best interest of the child that:

(a) "such rights in and to said child" as appellant "may have the right to assert be terminated";

(b) Appellant's petition for legitimation be denied;

(c) appellee be appointed managing conservator of the child.

The findings are supported by ample evidence. Under the record here presented, it is obvious that the court, having found that it was not in the best interest of the child that a parent-child relationship be established between the child and appellant, was obligated to enter such a decree as would be in the best interest of the child; therefore, since legitimation would bring the appellant within the Code definition of a parent and thus give him custody and control of the child, the trial court properly refused to enter such a decree.

Appellant's present confinement and lack of income with which to care for the child are the results of willful, deliberate and criminal acts on his part. He voluntarily placed himself in such a position that he cannot now assume the duties of a parent. Such conduct on the part of a parent has been held to constitute abandonment of a child. Hutson v. Haggard, 475 S.W.2d 330 (Tex.Civ.App.—Beaumont 1971, no writ). It has also been held that the inability of a parent from any cause to perform his parental duties justifies the State in denying the parent the right to exercise parental rights. Also v. Olivia, 43 S.W.2d 973 (Tex.Civ.App.—Galveston 1931, no writ). See also Sutter v. Yutz, 223 S.W.2d 554 (Tex.Civ.App.—El Paso 1949, writ dism'd). The rule of those cases certainly apply to this case, where appellant had not attained the status of a "parent" at the time of the hearing.

It is recognized that a person's future conduct may well be measured by his recent deliberate past conduct. De Llano v. Moran, 160 Tex. 490, 333 S.W.2d 359 (1960); Calhoun v. Ruffer, 425 S.W.2d 50 (Tex.Civ.App.—Houston (14th Dist.) 1968, no writ).

■ The filing of the petition for legitimation put appellant's fitness as a potential parent in issue. Any and all rights which appellant may have, if any, to the appointment as managing conservator must yield absolutely to the best interest of the child. Miller v. Watters, 466 S.W.2d 94 (Tex. Civ.App.—Austin 1971, writ ref'd n.r.e.); Richardson v. Althoff, 415 S.W.2d 520 (Tex.Civ.App.—Dallas 1967, no writ); Scozzari v. Curtis, 398 S.W.2d 819 (Tex. Civ.App.—Fort Worth 1966, no writ).

We have carefully considered all of appellant's remaining points of error. None of them have any merit. They are all overruled.

The judgment of the trial court is affirmed.